UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

- - - - - - - - - - - - -

UNITED STATES OF AMERICA,

    Plaintiff,

No. 2:19-CR-10

vs.

Hon. PAUL L. MALONEY
United States District Judge

GREGORY HALL SPARKMAN,

    Defendant.

_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

Although he possessed an M60 machinegun from which someone had removed the serial number, the defendant argues that the Guidelines enhancement for possession of a firearm with a removed or obliterated serial number should not apply in his case. According to the defendant, the text of this provision implicitly presumes a *mens rea*, which the guidelines commentary improperly dispensed with, contrary to the Sixth Circuit's holding in *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) and the Supreme Court's holding in *Rehaif v. United States*, __ U.S. __, 139 S. Ct. 2191 (2019).

The government asks this Court to overrule the defendant's objection. In *United States v. Murphy*, 96 F.3d 846 (6th Cir. 1996), the Sixth Circuit upheld the lack of *mens rea* for this sentencing provision over the same presumption-of-scienter argument that the defendant makes here. Neither *Havis* nor *Rehaif* overruled the Sixth Circuit on this question, so this Court should overrule the defense objection.

Separately, in keeping with the factors identified in 18 U.S.C. § 3553(a), the government asks this Court to consider the need to "promote respect for the law" and the need to "reflect the seriousness of the offense" in sentencing Mr. Sparkman. While the PSR writer has recommended a downward variance in this case, this Court must be careful not to minimize the wrongfulness of possessing weapons as dangerous as the machineguns and unmarked silencers that Mr. Sparkman kept.

### I. Procedural and Factual Background

On March 26, 2019, ATF personnel executed a search warrant on the defendant's home. (R.31: Final Presentence Investigation Report (PSR), ¶ 28, PageID.95.) They found all of the 21 machineguns listed in Count 2 of the Indictment. (*Id.* at ¶ 33, PageID.96.) One of the machineguns was an M60 machinegun from which the serial number had been removed:



Another machinegun was a .40 S & W caliber firearm made from a receiver that was originally manufactured as a semiautomatic weapon:



The collection also included Thompson-style ("Tommy") submachineguns, such as this one:



Mr. Sparkman also had several Uzi submachineguns, such as the one below. This particular Uzi also lacked National Firearms Act markings, as required by 26 U.S.C. § 5842:

3



ATF personnel also found 7 silencers, identified in Count 3 of the Indictment, none of which were marked with a serial number. (Attachment 1, ATF Report of Investigation 12, ¶ 8, *3.) Here is an example:



When confronted by the ATF, Mr. Sparkman immediately admitted his wrongdoing. He told ATF Special Agent Aaron Voogd, "I'm sure I'm gonna end up in court somewhere." He also told SA Voogd that, over the course of several years, he would sell as many as 5 or 6 semi-automatic AR-15 style firearms per year at gun shows, even though he lacked a license to deal firearms. He quoted his typical price and profit margin, stating, "If I got 50 to 80 dollars on a gun like that, I'd be happy." He explained

4

that in 2015, after a surgery helped improve his posture, he built 15 or 16 guns that year, although some of these were merely upper receivers, not complete firearms.[1] He now admits that these activities amounted to "building/manufacturing firearms for personal profit." (R.31: Final PSR, ¶ 29, PageID.95.)

A grand jury indicted Mr. Sparkman with possession of a firearm with an obliterated serial number, possession of machineguns, possession of silencers not identified by serial number, unlawful making of a firearm, and unlicensed manufacturing of firearms. (R.1: Indictment, PageID.1-6.) He ultimately pleaded guilty to the possession of machineguns charge. (R.31: Final PSR, ¶ 95, PageID.105.)

The Final PSR recommended a downward variance from a guidelines range of 46 to 57 months imprisonment. (*Id.* at PageID. 111.) The PSR recommended 6 months of imprisonment instead. (*Id.*)

The PSR also assessed points on the basis of § 2K2.1(b)(4)(A), which prescribes a 4-point enhancement if a firearm has a removed or obliterated serial number. (R.31: Final PSR, ¶ 45, PageID.98) The defense objects, arguing that USSG § 2K2.1(b)(4)(B), should not apply because the record did not support a finding that the defendant knew, or reasonably should have known, the firearm in question had an obliterated serial number. (R.33: Defense Sent. Memo., PageID.113.) The defense acknowledges that USSG § 2K2.1, comment. (n. 8(B)) states, "Subsection (b)(4) applies regardless of whether the defendant knew or had reason to believe that the firearm was stolen or had an altered or obliterated

---

[1] Statements taken from March 26, 2019 Recorded Interview of Gregory Sparkman, 2:05:10 through 2:11:00.

5

serial number." However, the defense also points to *Rehaif v. United States*, __ U.S. __, 139 S. Ct. 2191 (2019) and *United States v. Havis,* 927 F.3d 382 (6th Cir. 2019). The defense argues that these cases reveal error in the commentary for 2K2.1(b)(4)(B), showing that the commentary impermissibly expands on text of the guideline by removing an element of *mens rea*.

II. ANALYSIS

    A. **Neither the Text of USSG § 2K2.1(b)(4)(A) nor Due Process Require a *Mens Rea* for Application of the Removed Serial Number Enhancement.**

It has been settled for more than twenty years in Sixth Circuit caselaw that the removed serial number enhancement does not require any *mens rea* in order for the enhancement to apply. In *United States v. Murphy*, the defendant invoked the Supreme Court's holding in *Staples v. United States*, 511 U.S. 600 (1994), which had held that in order to sustain a conviction for the possession of an unregistered firearm under 26 U.S.C. § 5861(d), the government had to show that the defendant knew that his firearm possessed the characteristics that brought it within the scope of the statute, even though the text of the statute was silent on the question of *mens rea*. *Murphy*, 96 F.3d 846, 848 (6th Cir. 1996). Murphy argued that due process required courts to presume a *mens rea* requirement when applying the stolen firearms provision of the sentencing guidelines, just as courts had to presume a *mens rea* when interpreting criminal statutes.[2]

The Sixth Circuit disagreed, noting that the fields of statutory interpretation and guidelines interpretation are "fundamentally distinct." *Murphy*, 96 F.3d at 849. The court

---

[2] Both the stolen firearms enhancement and the removed serial number enhancement are prescribed by USSG 2K2.1(b)(4).

6

joined "every other court to consider the question" in concluding that "the lack of a *mens rea* requirement in U.S.S.G. §2K2.1(b)(4) comports with constitutional requirements." *Id.* The court observed that because "the upward adjustment for possession of a stolen firearm does not stand alone as an independent crime but is part of a sentencing court's quest to formulate a proper sentence," the *Staples* presumption-of-scienter holding did not apply to the interpretation of the stolen firearms enhancement. *Id* (internal quotation omitted).

The Sixth Circuit also observed that this was a rational choice as a matter of policy. A "statute may provide criminal liability without *mens rea* consistent with due process *if it is a regulatory measure in the interest of public safety.*" *Id.* quoting *United States v. Goodell*, 990 F.2d 497, 499 (9th Cir. 1993) (emphasis added). The court interpreted the lack of *mens rea* as "rationally related to the legitimate governmental goal of crime prevention." *Murphy*, 96 F.3d at 846, quoting *Goodell*, 990 F.2d at 499. By shifting the punitive burden for possessing stolen or obliterated-serial-number firearms to whoever possesses them, the enhancement creates a strong incentive for criminals to proactively avoid such weapons.

In *Rehaif v. United States*, the Supreme Court cited its own precedent in *Staples* and held that there was a presumption of scienter in 18 U.S.C. § 922(g), and that a defendant had to know of the characteristics that made him or her a prohibited firearm possessor in order to be guilty of violating the statute. *Rehaif v. United States*, __ U.S. __, 139 S. Ct. 2191, 2197 (2019). This was a logical consequence of the Supreme Court's holding in *Staples*, but *Rehaif* made no change to well-settled case law regarding guidelines interpretation.

Rather, as before, the Supreme Court applied the established presumption-of-scienter rule when interpreting a criminal statute.

Nevertheless, the defendant in this case now argues that *Rehaif* created a new *mens rea* requirement with respect to the removed serial number enhancement in the sentencing guidelines. But his argument is the same one that the Sixth Circuit rejected in 1996. Then, as now, a statutory presumption of scienter does not carry over into a guidelines presumption of scienter. Accordingly, *Rehaif* does not entitle Mr. Sparkman to new guidelines relief.

While the Sixth Circuit has not yet revisited the question of a removed serial number *mens rea* since *Rehaif* was decided, the Ninth Circuit has reached this issue, concluding in *United States v. Prien-Pinto* that the stolen firearms enhancement does not contain a *mens rea* and that due process does not require one for the enhancement to apply.[3] *United States v. Prien-Pinto*, 917 F.3d 1155, 1158 (9th Cir. 2019). In *Prien-Pinto*, the Ninth Circuit emphasized the soundness of that court's earlier opinion in *Goodell*, on which the Sixth Circuit relied in *Murphy*, and in which the Ninth Circuit originally rejected the argument that there was an implicit *mens rea* requirement in the guidelines. *See Prien-Pinto*, 917 F.3d at 1158 ("*Goodell*'s reading [of the guidelines] has always been the correct one"). Thus, *Prien-Pinto* demonstrates that there has been no sea change in the rules for guidelines interpretation despite years of intervening Supreme Court precedent between the 1990s, when *Goodell* and *Murphy* were decided, and today.

---

[3] This issue has been raised, but not yet decided, in the Sixth Circuit case of *United States v. Malone*, Case No. 19-6109. Briefing by both sides is complete.

8

Mr. Sparkman may try to distinguish *Prien-Pinto* by relying on the Sixth Circuit's opinion in *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019), which is non-binding in the Ninth Circuit. But *Havis* does not change the analysis here. In *Havis*, the Sixth Circuit held that guidelines commentary may not alter the meaning of guidelines text beyond what the text itself will bear. *Havis*, 927 F.3d at 387. Hence, if the text of the removed serial number enhancement contained a *mens rea* requirement and an application note dispensed with this requirement, *Havis* would invalidate that application note.

While application note 8 to the removed serial number enhancement does recite that the enhancement applies "regardless of whether the defendant knew or had reason to believe that the firearm was stolen," that application note simply mirrors the *mens rea* silence of the guidelines text. It does not expand upon it. As proof of this, consider that both *Goodell* and *Murphy* were decided years before application note 8 was added to the Guidelines. *See Prien-Pinto*, 917 F.3d at 1158 ("we had been reading this enhancement to apply without a mens rea for fourteen years before the Sentencing Commission began directing us to do so"). Without an expansion upon or conflict with the guidelines text, there is no *Havis* problem with respect to the removed serial number enhancement. Consequently, *Murphy* remains good law, and this Court should overrule the defendant's objection to the application of the removed serial number enhancement in his case.

### B. This Court's Sentence Must Communicate the Wrongfulness of Illegally Possessing Machineguns and Unmarked Serial Numbers.

By law, this Court must consider the need for the sentence imposed to "reflect the seriousness of the offense" and "promote respect for the law." 18 U.S.C. § 3553(a)(2).

This true even where, as here, the PSR concludes that the "defendant's age, health status, lack of criminal history, lack of violent history, lack of substance abuse, military service and employment history, and cooperation with the investigation, may support a sentence outside of the advisory guideline system." (R.31: Final PSR, ¶ 111, PageID.108.)

In assessing what sentence is appropriate for Mr. Sparkman, the government asks this Court to consider the importance of reaffirming the wrongfulness of possessing weapons of the type that Mr. Sparkman kept in his home. Machineguns and silencers are tools designed to take human life with either overwhelming lethality or comparative secrecy. It is no small matter to amass such weapons in one's home, especially when the law forbids doing so. Whatever sentence this Court imposes should encourage respect for the law's prohibition of possessing these weapons.

### III. CONCLUSION

For the forgoing reasons, the government asks this Court to overrule the defendant's objection to the application of United States Sentencing Guidelines § 2K2.1(b)(4)(B) in his case.

Respectfully Submitted,

ANDREW BYERLY BIRGE
United States Attorney

Dated: July 2, 2020

/s/ Austin J. Hakes
AUSTIN J. HAKES
Assistant United States Attorney
P.O. Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404